# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) <br> ) <br> DRYTECH, INC. ) <br>  ) <br> Debtor. ) <br>  ) <br>  ) <br> DRYTECH, INC., AND EPIC ) <br> DESIGN & CONSTRUCTION ) <br> CO., INC.,D/B/A PUROFIRST ) <br> AND D/B/A PUROFIRST OF ) <br> METROPOLITAN WASHINGTON ) <br>  ) <br>  ) <br> Plaintiffs ) <br> vs. ) <br>  ) <br> BELLE VIEW CONDOMINIUM ) <br> UNIT OWNERS ASSOCIATION ) <br> Defendants. ) | *Case Number: 05-07541* <br> *Chapter 11* <br> *Hon. George C. Paine, II* <br><br><br><br> *Adversary Number: 305-552A* |

## *MEMORANDUM*

This matter is before the court on Belle View Condominium Unit Owners Association's (hereinafter "defendant" or "Belle View") Motion to Transfer Venue. The motion is opposed by DryTech, Inc. and Purofirst of Metropolitan Washington (hereinafter "plaintiffs" or collectively "DryTech"). For the reasons contained herein, the court GRANTS defendant's motion to transfer venue pursuant to 28 U.S.C. §§ 1404(a) and/or 1412.

The factual background is taken largely from the court record, of which the court takes judicial notice. ***See Rule 201 of the Federal Rules of Evidence***; ***In re Hamby***, 360 B.R. 657, 659 (Bankr. E.D. Tenn. 2007 (taking judicial notice of undisputed facts of record in the Debtor's bankruptcy case file). The parties stipulated to the following uncontested facts in their joint pretrial statement filed with the court November 26, 2007 (Adversary Docket #131).

> 1. Plaintiff DryTech, Inc., (hereinafter "DryTech") is a debtor-in-possession in the above-referenced Chapter 11 bankruptcy proceeding.
>
> 2. Plaintiff Epic Design & Construction Co., Inc., d/b/a Purofirst and also d/b/a Purofirst of Metropolitan Washington (hereinafter "Purofirst"), is a business operating at 1078 Taft Street, Rockville, Maryland 20850.
>
> 3. Belle View Condominium Unit Owner Association (hereinafter "Belle View") is a citizen of the Commonwealth of Virginia and is an unincorporated association with its principal office address located at 1204 Belle View Boulevard, Alexandria, Virginia, 22307.
>
> 4. The claims stated in the Amended and Supplemental Complaint are the property of DryTech, Inc., the debtor in possession, either directly or by assignment.
>
> 5. This court has jurisdiction of the above-captioned proceeding pursuant to 28 U.S.C. §157 and 28 U.S.C. §1334, 28 U.S.C. §1331. Venue is proper pursuant to 28 U.S.C. §§1391 and 1409.
>
> 6. This is a proceeding that is otherwise related to a case under Title 11, pursuant to 28 U.S.C. §157.

Dry Tech filed this bankruptcy case on June 23, 2005. On June 28, 2005, DryTech filed its original Complaint. That Complaint named Blackburn & McCune

PLLC, Blackburn & McCune PC, Jay Slobey (collectively "the Blackburn defendants"), Purofirst, Robert Shattner and Belle View as defendants. The claims asserted by DryTech included (a) breach of contract, breach of implied contract, unjust enrichment, breach of the Maryland Construction Trust Statute and breach of the Maryland Prompt Pay Statute against Purofirst in connection with subcontracting services allegedly performed by DryTech at Purofirst's request at Belle View; (b) breach of contract and quantum meruit against Belle View for the services allegedly performed by DryTech at the Belle View property; and (c) breach of contract and legal malpractice claims against the Blackburn defendants.

On August 23, 2005, Purofirst filed a suggestion in bankruptcy, and the claims against it were automatically stayed. In the meantime, Belle View filed a Motion to Dismiss, Or, In The Alternative, To Transfer to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). On February 3, 2006, Judge Stosberg, to whom the case had been assigned as a result of the malpractice claims against the Blackburn defendants, overruled Belle View's Motion to Dismiss, Or, In The Alternative, To Transfer. Judge Stosberg denied the Motion ruling:

> In the case before the Court, Belle View has not carried its burden of persuasion to convince this Court that transfer of this proceeding to Virginia would be in the best interests of the economic and efficient administration of the estate. As stated earlier in reference to severance, the transfer to Virginia would increase the administrative costs to the estate. Dry Tech would be forced to litigate in a distant forum while still

prosecuting its main bankruptcy case in the Middle District of Tennessee. The simple costs of having representatives of Dry Tech travel, in addition to the costs of transporting any attendant evidence, goes against the economic and efficient administration of the estate. The costs are increased to a further degree considering the cost of counsel traveling or hiring local counsel. Moreover, by leaving the proceeding in the Middle District of Tennessee, this Court can insure a speedy resolution to the action which may or may not be available in Virginia. The expeditious handling of an adversary proceeding directly related to a main bankruptcy case certainly benefits the administration of the estate.

***Memorandum of J. Stosberg Denying Motion to Dismiss or Transfer Venue***, *Feb. 2, 2006 (Adversary Docket # 31)*.

In mid-June 2007, DryTech settled its claims against both Purofirst and the Blackburn defendants. Orders approving the settlements were signed by Judge Stosberg on July 13, 2007. *See Adversary Docket ##96 and 97.* On August 25, 2006, Judge Stosberg entered an order *nunc pro tunc* to May 25, 2006, granting a motion for final decree and closing the chapter 11 reorganization proceeding, excluding this adversary proceeding. Thereafter, because the legal malpractice claims that caused the recusal of the judges of this Court were settled, Judge Stosberg reassigned the adversary proceeding back to this court.

On September 17, 2007, DryTech and Purofirst filed a Joint Motion to Amend and Supplement the Complaint and to join Purofirst as a plaintiff. *See Adversary Docket*

4-U.S. Bankruptcy Court, M.D. Tenn.

*#110.* That Motion was granted, and the Amended and Supplemental Complaint now asserts only DryTech and Purofirst's claims against Belle View, under Virginia law. They include claims for money damages for services to Belle View in connection with disaster clean up efforts at Belle View Condominium in the wake of Hurricane Isabel in late September 2003.

With regard to those allegations, the parties listed as undisputed facts in their joint pretrial statement:

> 7. DryTech and Purofirst are in the business of disaster restoration services, including repair and remediation of fire and water losses, and mold remediation.
>
> 8. Belle View is a condominium association composed of the various unit owners of the Belle View Condominium.
>
> 9. On or about September 18 and/or 19, 2003, various units of Belle View Condominium Complex and neighboring facilities were flooded when Hurricane Isabel created storm surges and heavy rain throughout the Potomac and the Chesapeake Bay area.
>
> 10. On Friday, September 19, 2003, Purofirst was contacted on the telephone about problems which had arisen at Belle View's property.
>
> 11. On Friday, September 19, 2003, Purofirst representatives arrived at Belle View's property.
>
> 12. On Friday, September 19, 2003, Purofirst's representatives and Belle View's representatives knew that there had been significant flooding of the basements of the various buildings managed by Belle View.
>
> 13. On Friday, September 19, 2003, representatives of Belle View and Purofirst discussed having Purofirst provide emergency services to Belle View to pump the

water out of the basements at the property, to dry the basements, to provide remediation, and to repair whatever needed to be repaired as a result of the flooding and water damage.

14. At the conclusion of these discussions, Purofirst and Belle View representatives agreed that Purofirst should return the next day, Saturday, September 20, 2003, to deal with documents to have Purofirst provide pumping and drying services and related services.

15. On Saturday, September 20, 2003, Purofirst representatives met with Belle View's representatives at the offices of Belle View and presented Belle View with two documents to be signed by Belle View.

16. The first document was captioned Emergency Work Authorization ("EWA"). A true and correct copy of the Emergency Work Authorization is attached to the Amended and Supplemental Complaint as Exhibit 1.

17. The second document was captioned Repair Work Authorization ("RWA"). A true and correct copy of the Repair Work Authorization is attached to the Complaint as Exhibit 2.

18. On Saturday, September 20, 2003, Belle View's president, Edward "Kip" Smith, in his official capacity and with full authority to act on behalf of Belle View, signed the EWA and the RWA.

19. At the Saturday meeting, Mr. Smith represented to Purofirst that Belle View's deductible under its policy of insurance through Lloyd's of London ("Lloyd's") applicable to this loss was Seventy Five Thousand Dollars ($75,000.00), that the total of the insurance was One Million Two Hundred fifty Thousand Dollars ($1,250,000.00).

20. At approximately 7:00 p.m., on Tuesday, September 23, 2003, Belle View gave Purofirst oral notice that Purofirst's services were terminated, and instructed Purofirst and its subcontractors to remove all of their personnel and equipment from Belle View's property.

21. On September 30, 2003, Purofirst sent a written request for payment; however, this written request was not paid.

Following the filing of the Amended and Supplemental Complaint, Belle View filed an Answer with affirmative defenses on November 12, 2007. On December 14, 2007, Belle View filed the present motion to transfer venue to the bankruptcy court in Virginia. *See Adversary Docket ##128, 137*.[1]

The motion to transfer venue alleges that the Bankruptcy Court for the Eastern District of Virginia is the proper forum for the trial of this adversary proceeding citing 28 U.S.C. §§ 1404(a), 1412 and Federal Rule of Bankruptcy Procedure 7087. Federal Rule of Bankruptcy Procedure Rule 7087 provides that "the court may transfer any adversary proceeding, or any part thereof, to another district pursuant to 28 U.S.C. 1412." Section 1412 stats that:

> a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

Under 28 U.S.C. § 1404(a) allows a court to transfer venue:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

---

[1]Plaintiffs argue that Belle View's failure to raise venue in its first responsive pleading results in a waiver citing Fed.R.Civ.P. 12(b)(3) and (h)(1). Federal Rule of Civil Procedure Rule 12(b)(3) cites "improper venue" as a defense that must be raised, and 12(h)(1) also refers to "improper venue." Belle View has conceded that venue is proper, but instead asks the court to consider a transfer of a properly venued adversary proceeding to another proper venue based on 28 U.S.C. §§ 1412 and/or 1404(a). The court therefore, finds no waiver by Belle View of its right to request a transfer of venue. In addition, the court notes that venue was raised by Belle View prior to its original Answer being filed. The current motion could easily be construed as a reconsideration of Judge Stosberg's earlier denial of the venue motion.

28 U.S.C. §§ 1412 and 1404(a). The application of the venue statutes is somewhat controversial. Section 1404(a) is the more general, catch-all provision and 1412 is a bit more specific. The Kansas District Court noted the clash:

> There is a split of authority on the issue. Some courts maintain that transfer of actions "related to" bankruptcy proceedings is governed by § 1412. *See In re Bruno's*, 227 B.R. 311, 323 (Bankr. N.D.Ala. 1998); *Storage Equities v. Delisle*, 91 B.R. 616 (N.D. Ga. 1988); *In re Harnischfeger Industr.*, 246 B.R. 421 (Bankr. N.D. Ala. 2000); *Wittes v. Interco Inc.*, 139 B.R. 718 (Bankr. E.D.Mo. 1992); *Twyman v. Wedlo, Inc.*, 204 B.R. 1006 (Bankr. N.D.Ala. 1996); *SBKC Service Corp. v. 1111 Prospect Partners*, 204 B.R. 222 (Bankr. D.Kan. 1996); *In re Waits*, 70 B.R. 591 (Bankr. S.D.N.Y. 1987); *In re Oceanquest Feeder Serv.*, 56 B.R. 715 (Bankr. D. Conn. 1986); *Burlingame v. Whilden*, 67 B.R. 40 (Bankr. M.D.Fla. 1986); *General Instrument Corp. v. Financial and Bus. Serv.*, 62 B.R. 361 (Bankr. N.D.Ga. 1986); *McLemore v. Thomasson*, 60 B.R. 629 (Bankr. M.D. Tenn. 1986). Other courts maintain that § 1404(a) controls. *See Rumore v. Wamstad*, No. 01-2997, 2001 WL 1426680, at *2 (E.D.La.Nov.13, 2001); *Tultex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32 (S.D.N.Y. 2000); *Ni Fuel Co., Inc. v. Jackson*, 257 B.R. 600, 623 (N.D.Ok. 2000); *Jackson v. Venture Dept. Stores, Inc.*, 1998 WL 778057, *2 (N.D.Ill. 1998); *Searcy v. Knostman*, 155 B.R. 699 (S.D. Miss. 1993); *Murray, Wilson and Hunter v. Jersey Boats*, No. 91-7733, 1992 WL 37516, at *3 (E.D.Pa. Feb.21, 1992); *In re JCC Capital Corp.*, 147 B.R. 349 (Bankr. S.D.N.Y. 1992); *In re Thomson McKinnon Securities*, 126 B.R. 833, 834-35 (Bankr. S.D.N.Y. 1991); *Goldberg Holding Corp. v. NEP Productions*, 93 B.R. 33, 34 (S.D.N.Y. 1988); *United States for the Use of Metal Trims Industries, Inc. v. Klein Construction*, No. 83-2146, 1985 WL 3020 (Oct. 9, 1985). Interestingly, courts have reached different conclusions as to which interpretation constitutes the majority view. *Cf. In re Bruno's*, 227 B.R. at 323 (majority of cases use § 1412 transfers), *with Rumore*, 2001 WL 1426680, at *2 ("most courts" hold § 1404 governs transfer of "related to" actions).

*City of Liberal v. Trailmore Corp.*, 316 B.R. 358, 362 (D. Kan. 2004). The

differences between section 1404 and 1412 are slight, but may be significant.  The emphasis of 1404 is somewhat different than section 1412. Section 1404(a) mentions witnesses; section 1412 does not. But more importantly, the "interest of justice" component is construed quite differently in the case of a debtor in a bankruptcy proceeding than in the case of other litigants. So far as appears, nearly every case that has considered transfer of a bankruptcy proceeding has construed this phrase in section 1412 to give primacy to administrative matters affecting the estate. ***Sudbury, Inc. v. Dlott (In re Sudbury, Inc.)***, 149 B.R. 489, 492 (Bankr. N.D.Ohio 1993); ***In re Heritage Financial Network, Inc.***, 286 B.R. 318 (Bankr. S.D. Ohio 2002); ***Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),*** 896 F.2d 1384 (2nd Cir.1990); ***GEX Kentucky, Inc. v. Wolf Creek Collieries Co. (In re GEX Kentucky, Inc.)***, 85 B.R. 431 (Bankr. N.D.Ohio 1987).

In this case, however, the differences are of little import as the most keenly acute factor in the venue analysis, administration of the estate, is mostly removed from its' primacy by Judge Stosberg's 2006 Order that issued the final decree and closed this case, but for the resolution of this adversary proceeding. Thus, the court is left with the decision of whether to transfer venue of this adversary proceeding almost as if no

9-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:05-ap-00552   Doc 141   Filed 01/24/08   Entered 01/24/08 15:48:46   Desc Main
Document      Page 9 of 13

bankruptcy case had ever been filed.[2]

Factors commonly considered on the motion of a party to transfer venue include:

(1) the proximity of creditors to the court;
(2) the proximity of the debtor to the court;
(3) the proximity of necessary witnesses;
(4) the location of assets; and
(5) the economics of administration of the estate.

*In re HME Records, Inc*. 62 B.R. 611, 613 (Bankr. M.D.Tenn.,1986). ***See also In re Things Remembered Inc. v. BGTV, Inc. (In re Things Remembered)***, 151 B.R. 827 (Bankr. N.D. Ohio 1993) (listing factors more specifically as: "1. the relative ease of access to sources of proof; 2. availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; 3. the enforceability of judgment if one is obtained; 4. relative advantages and obstacles to fair trial; 5. a local interest in having localized controversies decided at home; 6. a trial in the state the law of which will govern the action.").

Balancing all of these factors creates an admittedly close decision. However, the

---

[2]Plaintiffs argue that this court retained "exclusive jurisdiction" over this matter upon the closing of the bankruptcy case. Belle View does not contest that retention of jurisdiction, but instead argues that due to changed circumstances in this case, venue is more conveniently found in the Bankruptcy Court for the Eastern District of Virginia. Furthermore, this claim may in fact, be non-core having even less impact on the administration of an already closed estate.

10-U.S. Bankruptcy Court, M.D. Tenn.

court finds that Belle View did, in fact, carry its burden to demonstrate that a change of venue to the Bankruptcy Court for the Eastern District of Virginia is warranted. Most, if not all, of the party and non-party witnesses with personal knowledge of facts relating to what happened at Belle View on September 20-23, 2003 are all located in Fairfax County, Virginia.[3] A trial in the Middle District of Tennessee does not allow for compulsory process for attendance pursuant to Federal Rule of Civil Procedure 45(b)(2)(B) increasing the cost for both parties.

Although Dry Tech, Inc. is located in Tennessee, Purofirst and Belle View are located in the Washington, D.C. metropolitan area. Alexandria, Virginia, is substantially more convenient to the current Belle View unit owners and Purofirst's current and former employees. Thus, a Virginia trial accommodates some of DryTech/Purofirst's witnesses and some of most of Belle View's witnesses.

Because this a Virginia law contract dispute, it is best decided in a Virginia forum. The court, while perfectly capable of interpreting Virginia law, finds no reason to do so when a venue change would facilitate the best application of Virginia law. All that is left is a contract-based action for money damages based upon state law theories arising out

---

[3] Purofirst previously sued Belle View in state court in Fairfax, Virginia, on the assigned claims before non-suiting them without prejudice. During discovery in that prior action, Purofirst identified most of its potential witnesses as residing in Virginia.

11-U.S. Bankruptcy Court, M.D. Tenn.

of events that occurred over four years ago in Fairfax, Virginia, all of which are governed by Virginia law. The local interest in having local issues decided locally and the transferee's familiarity with the governing laws can weigh in favor of a transfer. ***See Greater Yellowstone Coalition v. Bosworth*** 180 F. Supp.2d 124, 129 (D.D.C.,2001); ***Armco Steel Co. v. CSX Corp.***, 790 F. Supp. 311, 324 (D.D.C.1991). The court finds those public interests are best served by a change of venue.

The location of the proof also favors the venue change. Counsel's likening of this condominium community's destruction by Hurricane Isabel to that of plane crash was correct. As is evident from the Amended Complaint in this case, all of the events giving rise to the dispute between Belle View, DryTech, and Purofirst took place in the Belle View community in Fairfax County, Virginia. The actual situs of the damage, and the heart of the lawsuit is located not in the Middle District of Tennessee, but in Virginia. Other sources of proof such as documents maintained within the records of Belle View and Purofirst are located in Virginia.

Finally, many of the reasons guiding Judge Stosberg's initial denial of Belle View's prior motion to change venue no longer exist. Judge Stosberg kept the adversary

proceeding here to effectuate efficient administration of the estate by preventing the debtor from operating in two different forums, and to render a speedy disposition to further assist in administration of the estate. As the adversary proceeding stands today, the bankruptcy case is closed. The speedy disposition of the adversary proceeding did not occur in this forum, and now has little or no effect on the administration of the closed estate. The debtor may concentrate all efforts on the prosecution of this adversary without the distraction of a pending bankruptcy case. The court finds, on balance, a change of venue to the Bankruptcy Court for the Eastern District of Virginia is best interest of justice and convenient to most of the parties and witnesses.[4]

For all of the foregoing reasons, the court GRANTS Belle View's Motion for Transfer of Venue. The court ORDERS that venue in this case be transferred to the Bankruptcy Court for the Eastern District of Virginia. Counsel for Belle View shall prepare an Order not inconsistent with this Court's Memorandum within ten (10) days of entry of this Memorandum.

It is, THEREFORE, so ordered.
This ____ day of January, 2008.

***THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT TOP OF THE FIRST PAGE***

---

[4] Plaintiffs argued that the "law of the case" should prevent this court from transferring venue. With the filing of the Amended Complaint, Answer and the "shuffling around" of parties, the court cannot find that the venue motion is improper. The circumstances of this adversary proceeding have changed in such a way that the request to change venue is proper and granting such benefits more interested parties than it hurts.

13-U.S. Bankruptcy Court, M.D. Tenn.